RECEIVED 05 OCT 14 11:40USDC-ORP
Lodged

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>KERR-McGEE CHEMICAL WORLDWIDE LLC, FREMONT LUMBER COMPANY, and WESTERN NUCLEAR INCORPORATED.<br><br>Defendants. | CIVIL ACTION NO. 04-CV-00032<br><br>CONSENT DECREE |

# TABLE OF CONTENTS

I.    BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.   JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
III.  PARTIES BOUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
IV.   DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
V.    GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
VI.   PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS . . . . . . . . . . . . . . . . . . 14
VII.  REMEDY REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
VIII. QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS . . . . . . . . . . . . . . . . . . 22
IX.   ACCESS AND INSTITUTIONAL CONTROLS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
X.    REPORTING REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
XI.   EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS . . . . . . . . . . . . . . . . . . . . 33
XII.  PROJECT COORDINATORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
XIII. ASSURANCE OF ABILITY TO COMPLETE WORK . . . . . . . . . . . . . . . . . . . . . . . . . 37
XIV.  CERTIFICATION OF COMPLETION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
XV.   EMERGENCY RESPONSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
XVI.  PAYMENTS FOR RESPONSE COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
XVII. INDEMNIFICATION AND INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
XVIII. FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
XIX.  DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
XX.   SETTLEMENT OF EPA'S UAO CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
XXI.  SETTLEMENT OF THE SETTLING DEFENDANTS' LAWSUIT UNDER SECTION 310 OF CERCLA . 61
XXII. STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62
XXIII. COVENANTS BY PLAINTIFF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67
XXIV. COVENANTS BY SETTLING DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71
XXV.  EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION . . . . . . . . . . . . . . . . . . 74
XXVI. ACCESS TO INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75
XXVII. RETENTION OF RECORDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77
XXVIII. NOTICES AND SUBMISSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79
XXIX. EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 81
XXX.  RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 81
XXXI. APPENDICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82
XXXII. COMMUNITY RELATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82
XXXIII. MODIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82
XXXIV. TERMINATION OF ADMINISTRATIVE ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . 83
XXXV. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT . . . . . . . . . . . . . . . . . . . 84
XXXVI. SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84
XXXVII. FINAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 85

# I. B<small>ACKGROUND</small>

A.      The United States of America ("United States") on behalf of the Administrator of the United States Environmental Protection Agency ("EPA") and the Secretary of the Department of Agriculture ("Agriculture") filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. Sections 9606, 9607.

B.      The United States in its complaint seeks, inter alia: (1) reimbursement of costs incurred by the United States for response actions at the White King/Lucky Lass Superfund Site in the Fremont National Forest near Lakeview, Oregon together with accrued interest; (2) performance of studies and response work by defendants at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP") and (3) assessment of penalties for failure to comply with the Unilateral Order, Docket No. CERCLA-10-200-3-0011 dated November 27, 2002.

C.      In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of Oregon (the "State") of negotiations with potentially responsible parties regarding the implementation of the remedial design and remedial action for the Site, and EPA has provided the State with an opportunity to participate in such negotiations and be a party to this Consent Decree.

D.      Defendants Fremont Lumber Company, Kerr-McGee Chemical Worldwide L.L.C. ("Kerr-McGee") and Western Nuclear, Inc (collectively "Settling Defendants") filed a separate action under section 310 of CERCLA against EPA for mandamus, injunctive and declaratory relief: (1) to compel EPA's compliance with the alleged nondiscretionary

requirements of CERCLA relating to federal facilities; (2) to compel EPA to enter into an

Interagency Agreement with the responsible federal agency to perform the remedial action at the

Site; and (3) to declare that issuance of the Unilateral Order dated November 27, 2002, requiring

the Settling Defendants to perform the remedial action, conflicts with CERCLA section 120 and,

as such, violates the statute.

   E.  In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA

notified the state natural resource trustee and the Federal Trustees of negotiations with potentially

responsible parties regarding the release of hazardous substances that may have resulted in injury

to the natural resources and encouraged the trustees to participate in the negotiation of this

Consent Decree.

   F.  The Settling Defendants do not admit any liability to Plaintiff arising out of the

transactions or occurrences alleged in the complaints, nor do they acknowledge that the release or

threatened release of hazardous substances at or from the Site constitutes an imminent or

substantial endangerment to the public health or welfare or the environment.  The Settling

Federal Agencies do not admit any liability arising out of the transactions or occurrences alleged

in any claim asserted by the Settling Defendants.

   G.  Pursuant to Section 105 of CERCLA, 42 U.S.C. 9605, EPA placed the Site on the

National Priorities List ("NPL") under the name "Fremont National Forest Uranium Mines

(USDA)", set forth at 40 C.F.R. Part 300, Appendix B, Table 2 ("Federal Facilities Section, April

1995") by publication in the Federal Register on April 25, 1995, 60 Fed. Reg. 20330.

   H.  In response to a release or a substantial threat of a release of hazardous substances

at or from the Site, on June 12, 1991, the Forest Service sent a General Notice letter to multiple

potentially responsible parties including each Settling Defendant.

I.  The Settling Defendant Kerr-McGee entered into an Administrative Order on Consent ("AOC)  on April 25 , 1995, and commenced a Remedial Investigation and Feasibility Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430.

J.     The Settling Defendant Kerr-McGee completed a Remedial Investigation ("RI") Report in June of 2000, and the Settling Defendant Kerr-McGee completed a Feasibility Study ("FS") Report in June of 2000.

K.     Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, in October 1999, EPA announced the availability of the draft FS, and published notice of the proposed plan for remedial action in a major local newspaper of general circulation.  EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action.  A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Director of the Environmental Cleanup Office, Region 10 based the selection of the response action.

L.     The decision by EPA on the remedial action to be implemented at the Site is embodied in a final Record of Decision ("ROD"), executed on September 28, 2001, on which the State of Oregon and the Forest Service have given their concurrence.  The ROD includes a responsiveness summary to the public comments.  Notice of the final plan was published in accordance with Section 117(b) of CERCLA.  Since March 2003, the Settling Defendants have worked on the remedial design for the remedial action required by the ROD.

M.     Based on the information presently available to EPA and the Forest Service; EPA and the Forest Service believe that the Work will be properly and promptly conducted by the Settling Defendants if conducted in accordance with the requirements of this Consent Decree and its appendices.

N.      Solely for the purposes of Section 113(j) of CERCLA, the Remedial Action selected by the ROD and the Work to be performed by the Settling Defendants shall constitute a response action taken or ordered by the President.

O.      On September 30, October 1, 6, 7 and 14, 2004, the United States and the Settling Defendants participated in a mediation relating to matters addressed in this Consent Decree.

P.      The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b).  This Court also has personal jurisdiction over the Settling Defendants.  Solely for the purposes of this Consent Decree and the underlying complaints, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District.  Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. PARTIES BOUND

2.      This Consent Decree applies to and is binding upon the United States and upon Settling Defendants and their successors and assigns.  Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or

personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

3.    Settling Defendants shall provide a copy of this Consent Decree to each contractor hired to perform the Work (as defined below) required by this Consent Decree and to each person representing any Settling Defendant with respect to the Site or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree. Settling Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. Settling Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the Settling Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. DEFINITIONS

4.    Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq.*

"Civil Action # 03-CV-1073-AS" shall mean the judicial action filed by Settling

Defendants in Fremont Lumber Company, et al., v. United States Environmental Protection

Agency, No. 03-CV-1073-AS (D. Ore).

"Consent Decree" shall mean this Decree and all appendices attached hereto (listed in

Section XXXI).  In the event of conflict between this Decree and any appendix, this Decree shall

control.

"Day" shall mean a calendar day unless expressly stated to be a working day.  "Working

day" shall mean a day other than a Saturday, Sunday, or Federal holiday.  In computing any

period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday,

or Federal holiday, the period shall run until the close of business of the next working day.

"DEQ" shall mean the Oregon Department of Environmental Quality and any successor

departments or agencies of the State.

"Effective Date" shall be the effective date of this Consent Decree as provided in

Paragraph 125.

"EPA" shall mean the United States Environmental Protection Agency and any successor

departments or agencies of the United States.

"Forest Service" shall mean the United States Department of Agriculture, Forest Service

and any successor departments or agencies of the United States.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and

indirect costs, that the United States incurs in reviewing or developing plans, reports and other

items pursuant to this Consent Decree, verifying the Work, or otherwise implementing,

overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs,

contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII, IX

(including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure or implement institutional controls including, but not limited to, the amount of just compensation), XV, and Paragraph 105 of Section XXIII. Future Response Costs shall also include all Interim Response Costs, and all Interest on those Past Response Costs Settling Defendants have agreed to reimburse under this Consent Decree that has accrued pursuant to 42 U.S.C. § 9607(a) during the period from September 1, 2004 to the date of entry of this Consent Decree. However, Future Response Costs shall not include any costs incurred by the United States during participation in the mediation effort nor Forest Service contractor costs incurred in reviewing and overseeing the Remedial Design.

"Interim Response Costs" shall mean all costs, including direct and indirect costs, (a) paid or incurred by the United States in connection with the Site between September 1, 2004 and the Effective Date, or (b) incurred prior to the Effective Date but paid after that date. Interim Response Costs shall not include Forest Service contractor costs incurred in reviewing and overseeing the Remedial Design.

"Interest," shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"Matters Addressed" in this Consent Decree shall mean the Work, Past Response Costs of the United States, all response costs relating to this Site incurred by Settling Defendants prior to the entry of this decree or incurred in their performance under this Decree, and Future Response Costs of the United States as defined in this Decree. The "Matters Addressed" in this

7

Consent Decree do not include those response costs or response actions as to which the United

States has reserved its rights under this Consent Decree (except for claims for failure to comply

with this Decree), in the event that the United States asserts rights against Settling Defendants

coming within the scope of such reservations.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous

Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42

U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"ODOE" shall mean the Oregon Department of Energy and any successor departments or

agencies of the State.

"Operation and Maintenance" or "O & M" shall mean all activities required to maintain

the effectiveness of the Remedial Action as required under the Operation and Maintenance Plan

approved or developed by EPA pursuant to this Consent Decree and the Statement of Work

(SOW).

"Owner Settling Defendant" shall mean Fremont Lumber Company.

"Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral

or an upper case letter.

"Parties" shall mean the United States and the Settling Defendants.

"Past Response Costs" shall mean all costs, including, but not limited to, direct and

indirect costs, that the United States paid at or in connection with the Site through September 1,

2004, plus Interest on all such costs which has accrued pursuant to 42 U.S.C. § 9607(a) through

such date.

"Performance Standards" shall mean the cleanup standards and other measures of

achievement of the goals of the Remedial Action, set forth in the ROD and the SOW.

"Plaintiff" shall mean the United States.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 *et seq.* (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Site signed on September 28, 2001, by the Director of the Environmental Cleanup Office, EPA Region 10, and all attachments thereto.  The ROD is attached as Appendix A.

"Remedial Action" shall mean those activities, except for Operation and Maintenance, to be undertaken by the Settling Defendants to implement the ROD,  as set forth in the SOW and the final Remedial Design and Remedial Action Work Plans and other plans approved by EPA.

"Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph 12 of this Consent Decree and approved by EPA, and any amendments thereto.

"Remedial Design" shall mean those activities to be undertaken by the Settling Defendants to develop the final plans and specifications for the Remedial Action pursuant to the Remedial Design Work Plan.  The Remedial Design was approved by EPA on June 8, 2005.

"Remedial Design Work Plan" shall mean the document developed pursuant to Paragraph 11 of this Consent Decree and approved by EPA, and any amendments thereto.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendants" shall mean Kerr-McGee Chemical Worldwide LLC, Fremont Lumber Company and Western Nuclear Incorporated and their parents, subsidiaries, assigns, predecessors and successors.

"Settling Federal Agencies" shall mean those departments, agencies, and instrumentalities of the United States identified in Appendix E.

"Site" shall mean the Fremont National Forest Uranium Mines (USDA) Superfund Site which is commonly referred to as the White King/Lucky Lass Superfund Site. The White King Mine portion of the Site includes a water-filled excavation pit covering 13.4 acres, a protore stockpile covering 17 acres, an overburden stockpile covering 24 acres, other areas where overburden and ore were dumped or spilled and Augur Creek. The Lucky Lass Mine portion of the Site includes a 5 acre water-filled excavation pit, a 14 acre overburden stockpile and an adjacent meadow. These mines and associated areas encompass approximately 140 acres. The Site is depicted generally on the map attached as Appendix C.

"State" shall mean the State of Oregon by and through the Department of Environmental Quality and the Department of Energy.

"Statement of Work" or "SOW" shall mean the statement of work for implementation of the Remedial Design, Remedial Action, and Operation and Maintenance at the Site, as set forth in Appendix B to this Consent Decree and any modifications made in accordance with this Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by the Settling Defendants to supervise and direct the implementation of the Work under this Consent Decree.

"Unilateral Order or UAO" shall mean the Unilateral Order, Docket # CERCLA-10-200-3-0011, issued by EPA to Settling Defendants on November 27, 2002.

"United States" shall mean the United States of America, including all of its departments, agencies, and instrumentalities, which includes without limitation EPA, the Settling Federal Agencies and any federal natural resource trustee.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33), 42

U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C.

§ 6903(27); and (4) any "hazardous substance" under ORS 465.200 (subsection 15).

"Work" shall mean all activities Settling Defendants are required to perform under this

Consent Decree, except those required by Sections XX (Settlement of EPA's UAO Penalty

Claims) and  XXVII (Retention of Records).

V.  <u>GENERAL PROVISIONS</u>

5.      <u>Objectives of the Parties</u>.  The objectives of the Parties in entering into this

Consent Decree are to protect public health or welfare or the environment at the Site by the

design and implementation of response actions at the Site by the Settling Defendants, to

reimburse response costs of the Plaintiff, and to resolve the claims of Plaintiff against Settling

Defendants and claims of the Settling Defendants which have been or could have been asserted

against the United States with regard to this Site as provided in this Consent Decree.

6.      <u>Commitments by the Parties</u>

a.      Settling Defendants shall finance and perform the Work in accordance

with this Consent Decree, the ROD, the SOW, and all work plans and other plans, standards,

specifications, and schedules set forth herein or developed by Settling Defendants and approved

by EPA pursuant to this Consent Decree.  Settling Defendants shall also reimburse the United

States for Past Response Costs and Future Response Costs as provided in this Consent Decree.

The Settling Federal Agencies shall reimburse the Settling Defendants for a portion of their

response costs as provided in this Consent Decree.

b.      The obligations of Settling Defendants to finance and perform the Work

and to pay amounts owed the United States under this Consent Decree are joint and several.  In

the event of the insolvency or other failure of one or more Settling Defendants to implement the

11

requirements of this Consent Decree, the remaining Settling Defendants shall complete all such requirements.

7.      Compliance With Applicable Law.  All activities undertaken by Settling Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations.  Settling Defendants must also comply with all applicable or relevant and appropriate requirements of all Federal and state environmental laws as set forth in the ROD and the SOW.  The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be considered to be consistent with the NCP.

8.      Permits.

a.      As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work).  Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Defendants shall submit timely and complete applications and take all other actions reasonably necessary to obtain all such permits or approvals.

b.      The Settling Defendants may seek relief under the provisions of Section XVIII (Force Majeure) of this Consent Decree for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work.

c.      This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

9.      Notice to Successors-in-Title.

a.      With respect to any property owned or controlled by the Owner Settling

Defendant that is located within the Site, within 15 days after the entry of this Consent Decree, the Owner Settling Defendant shall submit to EPA for review and approval a notice to be filed with the County Clerk's Office or other appropriate office, Lake County, State of Oregon, which shall provide notice to all successors-in-title that the property is part of the Site, that EPA selected a remedy for the Site on September 28, 2001, and that potentially responsible parties have entered into a Consent Decree requiring implementation of the remedy. Such notice shall identify the United States District Court in which the Consent Decree was filed, the name and civil action number of this case, and the date the Consent Decree was entered by the Court. The Owner Settling Defendant shall record the notice within 10 days of EPA's approval of the notice. The Owner Settling Defendant shall provide EPA with a certified copy of the recorded notice within 10 days of recording such notice.

        b.      At least 30 days prior to the conveyance of any interest in property located within the Site including, but not limited to, fee interests, leasehold interests, and mortgage interests, the Owner Settling Defendant conveying the interest shall give the grantee written notice of (i) this Consent Decree, (ii) any instrument by which an interest in real property has been conveyed that confers a right of access to the Site (hereinafter referred to as "access easements") pursuant to Section IX (Access and Institutional Controls), and (iii) any instrument by which an interest in real property has been conveyed that confers a right to enforce restrictions on the use of such property (hereinafter referred to as "restrictive easements") pursuant to Section IX (Access and Institutional Controls). At least 30 days prior to such conveyance, the Owner Settling Defendant conveying the interest shall also give written notice to EPA, the Forest Service, the State, and the other Settling Defendants of the proposed conveyance, including the

name and address of the grantee, and the date on which notice of the Consent Decree, access

easements, and/or restrictive easements was given to the grantee.

        c.      In the event of any such conveyance, the Owner Settling Defendant

obligations under this Consent Decree, including, but not limited to, its obligation to provide or

secure access and institutional controls, as well as to abide by such institutional controls,

pursuant to Section IX (Access and Institutional Controls) of this Consent Decree, shall continue

to be met by the Owner Settling Defendant.  In no event shall the conveyance release or

otherwise affect the liability of the Owner Settling Defendant to comply with all provisions of

this Consent Decree, absent the prior written consent of EPA.  If the United States  and the other

Settling Defendants approve (provided such approval by the Settling Defendants shall not be

unreasonably withheld), the grantee may perform some or all of the Work under this Consent

Decree.

VI. <span style="text-decoration: underline;">P</span><span style="text-decoration: underline;">ERFORMANCE OF THE</span> <span style="text-decoration: underline;">W</span><span style="text-decoration: underline;">ORK</span> <span style="text-decoration: underline;">B</span><span style="text-decoration: underline;">Y</span> <span style="text-decoration: underline;">S</span><span style="text-decoration: underline;">ETTLING</span> <span style="text-decoration: underline;">D</span><span style="text-decoration: underline;">EFENDANTS</span>

     10.      <span style="text-decoration: underline;">Selection of Supervising Contractor</span>.

        a.      All aspects of the Work to be performed by Settling Defendants pursuant

to Sections VI (Performance of the Work by Settling Defendants), VII (Remedy Review), VIII

(Quality Assurance, Sampling and Data Analysis), and XV (Emergency Response) of this

Consent Decree shall be under the direction and supervision of the Supervising Contractor, the

selection of which shall be subject to disapproval by EPA after a reasonable opportunity for

review and comment by the State and the Forest Service.  The Settling Defendants have notified

EPA, the State and the Forest Service in writing of the name, title, and qualifications of the

contractor proposed to be the Supervising Contractor and EPA did not disapprove the proposed

Supervising Contractor.  With respect to any new contractor proposed to be Supervising

14

Contractor, Settling Defendants shall demonstrate that the proposed contractor has a quality system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan (QMP). The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA. If at any time thereafter, Settling Defendants propose to change a Supervising Contractor, Settling Defendants shall give such notice to EPA, the State, and the Forest Service and must obtain an authorization to proceed from EPA before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree. EPA shall respond timely to a request for such authorization, after a reasonable opportunity for review and comment by the State and the Forest Service.

b.      If EPA disapproves a proposed Supervising Contractor, EPA will notify Settling Defendants in writing. Settling Defendants shall submit to EPA, the State and the Forest Service a list of contractors, including the qualifications of each contractor, that would be acceptable to them within 30 days of receipt of EPA's disapproval of the contractor previously proposed. EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors. Settling Defendants may select any contractor from that list that is not disapproved and shall notify EPA, the State and the Forest Service of the name of the contractor selected within 21 days of EPA's authorization to proceed.

c.      If EPA fails to provide written notice of its authorization to proceed or

disapproval as provided in this Paragraph and this failure prevents the Settling Defendants from meeting one or more deadlines in a plan approved by the EPA pursuant to this Consent Decree, Settling Defendants may seek relief under the provisions of Section XVIII (Force Majeure) hereof.

11.    <u>Remedial Design</u>

a.    The Settling Defendants have submitted to EPA, the Forest Service and the State a work plan for the design of the Remedial Action at the Site ("Remedial Design Work Plan" or "RD Work Plan").  The Remedial Design Work Plan provides for design of the remedy set forth in the ROD, in accordance with the SOW and for achievement of the Performance Standards and other requirements set forth in the ROD, this Consent Decree and/or the SOW. The Remedial Design Work Plan is attached hereto as Appendix D and is incorporated into and is enforceable under this Consent Decree.  The Settling Defendants have submitted to EPA, the State and the Forest Service a Health and Safety Plan for field design activities.

b.    The Settling Defendants shall submit to EPA, the Forest Service and the State all plans, submittals and other deliverables required under the approved Remedial Design Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans and Other Submissions).  Unless otherwise directed by EPA, Settling Defendants shall not commence further Remedial Design activities at the Site prior to approval of the Remedial Design Work Plan.

c.    The preliminary design submittal shall include, at a minimum, the following: (1) design criteria; (2) results of treatability studies; (3) results of additional field sampling and pre-design work; (4) project delivery strategy; (5) preliminary plans, drawings and

sketches; (6) required specifications in outline form; and (7) preliminary construction schedule. The preliminary design has been submitted and approved.

        d.     The intermediate design submittal, if required by EPA or if independently submitted by the Settling Defendants, shall be a continuation and expansion of the preliminary design. Any value engineering proposals must be identified and evaluated during this review. The intermediate design has been submitted and approved.

        e.     The pre-final/final design submittal shall include, at a minimum, the following: (1) final plans and specifications; (2) Operation and Maintenance Plan; (3) Construction Quality Assurance Project Plan ("CQAPP"); (4) Field Sampling Plan (directed at measuring progress towards meeting Performance Standards); and (5) Contingency Plan. The CQAPP, which shall detail the approach to quality assurance during construction activities at the Site, shall specify a quality assurance official ("QA Official"), independent of the Supervising Contractor, to conduct a quality assurance program during the construction phase of the project. The 100% Remedial Design has been submitted and approved.

        12.     <u>Remedial Action</u>.

        a.     On February 28, 2005 Settling Defendants submitted to EPA, the Forest Service and the State a proposed work plan for the performance of the Remedial Action at the Site ("Remedial Action Work Plan"). The Remedial Action Work Plan shall provide for construction and implementation of the remedy set forth in the ROD and achievement of the Performance Standards, in accordance with this Consent Decree, the ROD, the SOW, and the design plans and specifications developed in accordance with the Remedial Design Work Plan and approved by EPA. Upon its approval by EPA, the Remedial Action Work Plan shall be incorporated into and become enforceable under this Consent Decree. At the same time as they

submitted the Remedial Action Work Plan, Settling Defendants submitted to EPA, the State and

the Forest Service a proposed Health and Safety Plan for field activities required by the Remedial

Action Work Plan which must conform to the applicable Occupational Safety and Health

Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

        b.      The Remedial Action Work Plan shall include the following: (1) schedule

for completion of the Remedial Action; (2) method for selection of the contractor; (3) schedule for

developing and submitting other required Remedial Action plans;  (4) groundwater monitoring

plan; (5) methods for satisfying permitting requirements; (6) methodology for implementation of

the Operation and Maintenance Plan; (7) methodology for implementation of the Contingency

Plan; (8) tentative formulation of the Remedial Action team; (9) construction quality control plan

(by constructor); and  (10) procedures and plans for the decontamination of equipment and the

disposal of contaminated materials.  The Remedial Action Work Plan shall also include the

methodology for implementation of the Construction Quality Assurance Plan and a schedule for

implementation of all Remedial Action tasks identified in the final design submittal and shall

identify the initial formulation of the Settling Defendants' Remedial Action Project Team

(including, but not limited to, the Supervising Contractor).  The Final Remedial Action Work Plan

has been submitted and approved.

        c.      Upon approval of the Remedial Action Work Plan by EPA, after a

reasonable opportunity for review and comment by the Forest Service and the State, Settling

Defendants shall implement the activities required under the Remedial Action Work Plan.  The

Settling Defendants shall submit to EPA, the Forest Service and the State all plans, submittals, or

other deliverables required under the approved Remedial Action Work Plan in accordance with

the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans

and Other Submissions).  Unless otherwise directed by EPA, Settling Defendants shall not

commence physical Remedial Action activities at the Site prior to approval of the Remedial

Action Work Plan.

13.     The Settling Defendants shall continue to implement the Remedial Action and

O&M until the Performance Standards are achieved and for so long thereafter as is otherwise

required under this Consent Decree.  The Forest Service will provide routine road maintenance

during the Remedial Action and following certification of Remedial Action shall periodically

inspect the Site thereafter, as described in the SOW.

14.     <u>Modification of the SOW or Related Work Plans</u>.

a.     If EPA determines, after consultation with the State and the Forest Service,

that modification to the work specified in the SOW and/or in work plans developed pursuant to

the SOW is necessary to achieve and maintain the Performance Standards or to carry out and

maintain the effectiveness of the remedy set forth in the ROD, EPA may require that such

modification be incorporated in the SOW and/or such work plans, provided, however, that a

modification may only be required pursuant to this Paragraph to the extent that it is consistent

with the scope of the remedy selected in the ROD.

b.     If Settling Defendants object to any modification determined by EPA to be

necessary pursuant to this Paragraph, they may seek dispute resolution pursuant to Section XIX

(Dispute Resolution), Paragraph 73(record review).  The SOW and/or related work plans shall be

modified in accordance with final resolution of the dispute.

c.     Settling Defendants shall implement any work required by any

modifications incorporated in the SOW and/or in work plans developed pursuant to the SOW in

accordance with this Paragraph.

d.      Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

15.     Settling Defendants acknowledge and agree that nothing in this Consent Decree, the SOW, or the Remedial Design or Remedial Action Work Plans constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards.

16.     a.      Settling Defendants shall, prior to any off-Site shipment of Waste Material from the Site to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator of such shipment of Waste Material.  However, this notification requirement shall not apply to any off-Site shipments when the total volume of all such shipments will not exceed 10 cubic yards.

(1)     The Settling Defendants shall include in the written notification the following information, where available: (1) the name and location of the facility to which the Waste Material is to be shipped; (2) the type and quantity of the Waste Material to be shipped; (3) the expected schedule for the shipment of the Waste Material; and (4) the method of transportation.  The Settling Defendants shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

(2)     The identity of the receiving facility and state will be determined by the Settling Defendants following the award of the contract for Remedial Action construction. The Settling Defendants shall provide the information required by Paragraph 16.a as soon as practicable after the award of the contract and before the Waste Material is actually shipped.

b.       Before shipping any hazardous substances, pollutants, or contaminants from the Site to an off-site location, Settling Defendants shall obtain EPA's certification that the proposed receiving facility is operating in compliance with the requirements of CERCLA Section 121(d)(3) and 40 C.F.R. 300.440.  Settling Defendants shall only send hazardous substances, pollutants, or contaminants from the Site to an off-site facility that complies with the requirements of the statutory provision and regulations cited in the preceding sentence.

VII. <u>REMEDY REVIEW</u>

17.    <u>Periodic Review</u>.  Settling Defendants shall conduct any studies and investigations as requested by EPA, in order to permit EPA to conduct reviews of whether the Remedial Action is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA and any applicable regulations.

18.    <u>EPA Selection of Further Response Actions</u>.  If EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, EPA may select further response actions for the Site in accordance with the requirements of CERCLA and the NCP.

19.    <u>Opportunity To Comment</u>.  Settling Defendants, the State and the Forest Service and, if required by Sections 113(k)(2) or 117 of CERCLA, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

20.    <u>Settling Defendants' Obligation To Perform Further Response Actions</u>.  If EPA selects further response actions for the Site, the Settling Defendants shall undertake such  further response actions to the extent that the reopener conditions in Paragraph 101 or Paragraph 102

(United States' reservations of liability based on unknown conditions or new information) are satisfied. Settling Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute (1) EPA's determination that the reopener conditions of Paragraph 101 or Paragraph 102 of Section XXIII (Covenants Not To Sue by Plaintiff) are satisfied, (2) EPA's determination that the Remedial Action is not protective of human health and the environment, or (3) EPA's selection of the further response actions. Disputes pertaining to whether the Remedial Action is protective or to EPA's selection of further response actions shall be resolved pursuant to Paragraph 73 (record review).

21.    Submissions of Plans. If Settling Defendants are required to perform the further response actions pursuant to Paragraph 20, they shall submit a plan for such work to EPA for approval in accordance with the procedures set forth in Section VI (Performance of the Work by Settling Defendants) and shall implement the plan approved by EPA in accordance with the provisions of this Decree.

### VIII. QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

22.    Settling Defendants shall use quality assurance, quality control, and chain of custody procedures for all samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003, March 2001) "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/600/R-98/018, February 1998), and subsequent amendments to such guidelines upon notification by EPA to Settling Defendants of such amendment. Amended guidelines shall apply only to procedures conducted after such notification. Prior to the commencement of any monitoring project under this Consent Decree, Settling Defendants shall submit to EPA for approval, after a reasonable opportunity for review and comment by the Forest Service and the State, a Quality Assurance Project Plan ("QAPP") that is consistent with the

SOW, the NCP and applicable guidance documents. If relevant to the proceeding, the Parties

agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and

approved by EPA shall be admissible as evidence, without objection, in any proceeding under this

Decree. Settling Defendants shall ensure that EPA, Forest Service and State personnel and their

authorized representatives are allowed access at reasonable times to all laboratories utilized by

Settling Defendants in implementing this Consent Decree. In addition, Settling Defendants shall

ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the QAPP

for quality assurance monitoring. Settling Defendants shall ensure that the laboratories they

utilize for the analysis of samples taken pursuant to this Decree perform all analyses according to

accepted EPA methods. Accepted EPA methods consist of those methods which are documented

in the "Contract Lab Program Statement of Work for Inorganic Analysis" and the "Contract Lab

Program Statement of Work for Organic Analysis," dated February 1988, and any amendments

made thereto during the course of the implementation of this Decree; however, upon approval by

EPA, after opportunity for review and comment by the Forest Service and the State, the Settling

Defendants may use other analytical methods which are as stringent as or more stringent than the

CLP- approved methods. Settling Defendants shall ensure that all laboratories they use for

analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-

equivalent QA/QC program. Settling Defendants shall only use laboratories that have a

documented Quality System which complies with ANSI/ASQC E4-1994, "Specifications and

Guidelines for Quality Systems for Environmental Data Collection and Environmental

Technology Programs," (American National Standard, January 5, 1995), and "EPA Requirements

for Quality Management Plans (QA/R-2)," (EPA/240/B-01/002, March 2001) or equivalent

documentation as determined by EPA. EPA may consider laboratories accredited under the

National Environmental Laboratory Accreditation Program (NELAP) as meeting the Quality System requirements.  Settling Defendants shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Decree will be conducted in accordance with the procedures set forth in the QAPP approved by EPA.

23.     Upon request, the Settling Defendants shall allow split or duplicate samples to be taken by EPA, the Forest Service and the State or their authorized representatives.  Settling Defendants shall notify EPA, the Forest Service and the State not less than 28 days in advance of any sample collection activity unless shorter notice is agreed to by EPA.  In addition, EPA, the Forest Service and the State shall have the right to take any additional samples that EPA, the Forest Service or the State deem necessary.  Upon request, EPA, the Forest Service and the State shall allow the Settling Defendants to take split or duplicate samples of any samples they take as part of the Plaintiff's oversight of the Settling Defendants' implementation of the Work.

24.     Settling Defendants shall submit to EPA, the Forest Service and the State the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Defendants with respect to the Site and/or the implementation of this Consent Decree unless EPA agrees otherwise.

25.     Notwithstanding any provision of this Consent Decree, the United States retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

## IX. ACCESS AND INSTITUTIONAL CONTROLS

26.     If the Site, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by any of the Settling Defendants, such Settling Defendants shall:

24

a.      commencing on the date of lodging of this Consent Decree, provide the United States, the State, and their representatives and contractors, with access at all reasonable times to the Site, or such other property, for the purpose of conducting any activity related to this Consent Decree including, but not limited to, the following activities:

(1)      Monitoring the Work;

(2)      Verifying any data or information submitted to the United States or the State;

(3)      Conducting investigations relating to contamination at or near the Site;

(4)      Obtaining samples;

(5)      Assessing the need for, planning, or implementing additional response actions at or near the Site;

(6)      Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

(7)      Implementing the Work pursuant to the conditions set forth in Paragraph 104 of this Consent Decree;

(8)      Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents, consistent with Section XXVI (Access to Information);

(9)      Assessing Settling Defendants' compliance with this Consent Decree; and